J-A35033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: M.A.K., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: L.D., THE NATURAL FATHER, | |
| Appellant | No. 1193 WDA 2014 |

Appeal from the Order June 18, 2014
In the Court of Common Pleas of Jefferson County
Orphans' Court at No(s): 7A-2014 OC


BEFORE:  BENDER, P.J.E., BOWES, and ALLEN, JJ.


MEMORANDUM BY BOWES, J.:                **FILED JANUARY 28, 2015**

L.D. ("Father") appeals from the order wherein the trial court terminated his parental rights to his son M.A.K.  We affirm.

M.A.K. was conceived outside of the marriage of his Mother, K.K., to T.K., her husband at conception.[1]  The child was born premature and subsequently diagnosed with cerebral palsy.  After several weeks, he was discharged from the hospital into the kinship foster care of his maternal grandmother, his current pre-adoptive resource.  Jefferson County Children and Youth Services ("CYS") supervised the kinship placement.  Following the confirmation of Father's paternity, the agency placed M.A.K. with Father

_____

[1] K.K. and T.K., the presumptive father, relinquished their respective parental rights to M.A.K. on June 5, 2014.

briefly, but removed him from Father's care after Father permitted Mother's unsupervised contact with the child and upon discovery of an extensive, untreated diaper rash. The rash was so severe that Father ultimately pled guilty to endangering the welfare of a child and was sentenced to two to five years imprisonment. Thereafter, CYS returned M.A.K. to the maternal grandmother, where he has remained since October 2012.

M.A.K. is currently two-and-one-half years old. Due to cerebral palsy, he has low muscle tone, receives occupational, physical, and speech therapies, and wears a helmet to protect his brain from injury. The juvenile court formally adjudicated M.A.K. dependent on October 24, 2012. Six months later, as part of the April 24, 2013 permanency review hearing, the juvenile court found aggravated circumstances against Father, based upon his alleged failure to maintain substantial and continuing contact with his son. The juvenile court also formally changed the child's permanency goal to adoption. Father, who did not attend the hearing, failed to appeal the final order finding aggravated circumstances or changing the permanency goal to adoption.

Father is incarcerated at SCI Pine Grove. He is serving the sentence imposed on the above-referenced guilty plea concurrently with an aggregate term of eight and one-half to forty-five years imprisonment that was originally imposed in 2006. He was on parole during his son's conception and birth, but immediately after the filing of the charges associated with the

diaper rash, he violated parole. Prior to his eventual apprehension and re-incarceration, he was a fugitive for several weeks. Despite the protracted term of imprisonment, with credit for time served and the application of the RRRI alternative minimum sentence, Father hopes to be released as early as July 2015.[2]

On March 14, 2014, CYS scheduled one supervised visitation between Father and M.A.K. at SCI Pine Grove. The agency filed the underlying petition to terminate Father's parental rights two weeks after that visit. On June 18, 2014, the trial court convened an evidentiary hearing and granted CYS's petition as to Father, terminating his parental rights pursuant to 23 Pa.C.S. § 2511(a)(5), (8) and (b). This timely appeal followed.[3]

Father presents the following questions for our review:

[1.] Whether the Trial Court committed substantial error in entering an Aggravated Circumstances finding in April 2013 on

_____

[2] Where, as here, the minimum sentence is greater than three years, the alternative minimum sentence "shall be equal to five-sixths of the minimum sentence[.]" 61 Pa.C.S § 4505(c). Quoting 37 Pa.Code § 96.1(b), our Supreme Court explained in **Commonwealth v. Chester**, 101 A.3d 56, 57 (Pa. 2014), "if an eligible offender 'successfully completes the [RRRI] program plan, maintains a good conduct record and continues to remain an eligible offender,' he or she may 'be paroled on the RRRI minimum sentence date unless the [Parole] Board determines that parole would present an unreasonable risk to public safety or that other specified conditions have not been satisfied.'"

[3] Father complied with Pa.R.A.P. 1925(a)(2)(i) by filing a concise statement of errors complained of on appeal concomitant with the notice of appeal.

the basis that the Father failed to maintain substantial continuing contact with the minor child between October 2012 and April 2013, when the Father regularly had weekly, overnight visits with the minor through at least January 2013.

[2.] Whether the Trial Court committed an error and/or abused its discretion when it eliminated the Agency's burden to make reasonable efforts to reunify father and the minor child.

[3.] Whether the Trial Court committed an error in terminating Father's parental rights where Agency failed to assist Father in maintaining a relationship with the minor child, and the same inaction prevented further development of an existing bond between Father and son.

[4.] Whether the Trial Court committed an error and/or abuse of discretion in terminating Father's rights when the Agency failed to show by evidence that Father failed to meet the Agency's goals.

[5.] Whether the Trial Court committed an error and/or abuse of discretion in finding that the termination of Father's rights was in the best interest of the developmental, physical, and emotional needs and welfare of the child.

Father's brief at 4 (Father's issues reordered for clarity).

We review the orphans' court's determination for an abuse of discretion. *In re D.C.D.* __ A.3d __, 2014 WL 7089267 (Pa. 2014) ("*In re D.C.D. II*") ("When reviewing a trial court's decision to grant or deny a termination of parental rights petition, an appellate court should apply an abuse of discretion standard, accepting the findings of fact and credibility determinations if they are supported by the record, and reversing only if the trial court made an error of law or abused its discretion."). This is a highly deferential standard, and to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also

- 4 -

support a contrary determination. *In re A.S.*, 11 A.3d 473, 477 (Pa.Super. 2010). CYS has the burden of proving the statutory grounds for termination by clear and convincing evidence. *In re Adoption of L.J.B.*, 18 A.3d 1098 (Pa. 2011).

We address Father's first three issues collectively, and we reject his attempts to introduce aspects of the prior dependency proceedings before the juvenile court as grounds to reverse the orphans' court's order terminating his parental rights. In essence, Father complains that the juvenile court erred in: (1) finding aggravated circumstances against him; (2) relieving the agency of its obligation to provide reasonable efforts toward reunification; (3) and changing M.A.K.'s permanency goal from reunification to adoption. Specifically, Father challenges the juvenile court's finding of aggravated circumstances, which permitted CYS to reallocate its resources from reunification toward adoption and relieved the agency from its burden of making reasonable efforts to reunite him with M.A.K. In support of these arguments, Father stresses facts that contradict the juvenile court's factual finding regarding Father's sustained lack of contact with M.A.K. during 2013. Father also contends that he was proceeding *pro se* when the pertinent orders were entered, but he does not explain whether he waived counsel or if the juvenile court failed to appoint counsel for those proceedings.

Nevertheless, recognizing that the procedural posture of this appeal implicates only the orphans' court order that terminated his parental rights to M.A.K. and not any prior juvenile court orders that Father failed to appeal,

- 5 -

Father attempts to invoke our holding in *In re D.C.D.*, 91 A.3d 173 (Pa.Super. 2014), *overruled by In re D.C.D. II*, *supra*, as an end run around the finality of the juvenile court's decisions. The crux of Father's argument is that, since CYS failed to provide reasonable efforts toward achieving his reunification with M.A.K., the agency's petition to terminate his parental rights is fundamentally defective. For the following reasons, we disagree.

In this Court's decision in *In re D.C.D.*, we reversed an order terminating parental rights because the orphans' court previously determined that CYS failed to make reasonable efforts to reunify the family during the juvenile court proceedings. In short, the *In re D.C.D.* Court held that, when read in *pari materia*, § 2511(a) of the Adoption Act and § 6351(f)(9) of the Juvenile Act required agencies to establish reasonable efforts as a prerequisite to filing a petition for terminating parental rights. Accordingly, we found that the orphans' court was precluded from terminating parental rights absent the demonstration of reasonable efforts.

Father's reliance upon *In re D.C.D.* is misplaced. Most importantly, our Supreme Court recently reversed our holding in *In re D.C.D.* and specifically held that the agency's effort during the juvenile court proceedings is not relevant to the orphans' court's determination of whether to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b). ***See In re D.C.D. II***, ***supra***. Specifically, the High Court reasoned,

- 6 -

Accordingly, while reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent.

*Id*. at *9. Hence, Father's invocation of our now-abrogated holding requiring agencies to demonstrate evidence of reasonable efforts as a prerequisite to terminating parental rights is unavailing.

Accordingly, we reiterate herein that CYS's effort in this case is irrelevant to the determination of whether the agency established the statutory grounds to terminate Father's parental rights. Indeed, "the focus of a termination proceeding is on the parents' conduct, and the adequacy of the agency's reunification efforts is not a valid consideration . . . Thus, [an agency's reunification efforts] alone is not a basis to disturb [a] trial court's order terminating . . . parental rights." **In re A.D.**, 93 A.3d 888, 896 (Pa.Super. 2014) citing **In re B.L.W.**, 843 A.2d 380, 384 n.1 (Pa.Super. 2004) (*en banc*) ("the adequacy of CYS's efforts toward reunification is not a valid consideration at the termination of parental rights stage, as the law allows CYS to give up on the parent once the service plan goal has been changed to adoption") (internal quotes and brackets omitted). Father's claim fails.

Moreover, contrary to Father's protestations, this case is distinguishable from a scenario where a child protective service agency simply abandons a parent during the dependency proceedings. Indeed, in

the case at bar, neither the juvenile court nor the orphans' court determined that CYS failed to make reasonable efforts to reunify Father with M.A.K. In reality, the juvenile court found aggravated circumstances against Father and relieved CYS of its obligation to commit additional resources toward Father's reunification. As we previously noted, Father failed to appeal the pertinent juvenile court orders. Thus, even though Father alleges facts that appear to contradict the juvenile court's finding of aggravating circumstances, that determination is final and cannot be challenged collaterally at this juncture.[4]

Next, we address whether CYS established the statutory grounds for terminating Father's parental rights. Requests to involuntarily terminate a biological parent's parental rights are governed by 23 Pa.C.S. § 2511, which provides in pertinent part as follows:

_____

[4] Even if we were to attempt to revisit the juvenile court's finding of aggravated circumstances, which we do not, the certified record transmitted to this court would be insufficient to conduct a meaningful review. Since the only record before us on appeal relates to the termination of Father's parental rights in orphans' court, we cannot review the juvenile court record to examine Father's claims of errors in the dependency action. While either party was free to introduce any and all of the dependency records as exhibits during the orphans' court's proceedings, that did not occur herein. The only document in the certified record that has any bearing on the juvenile court proceeding is the notes of testimony of a brief permanency review hearing on March 26, 2014. Significantly, that hearing occurred several months after the determination of aggravated circumstances and the concomitant goal change. Hence, it sheds no light upon Father's complaints. Thus, even if we could revisit the juvenile court's decisions at this late date, we have nothing to review.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(5)      The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8)      The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The test for terminating parental rights consists of two parts. In *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007), we explained:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

We need only agree with the trial court's decision as to one subsection of 23 Pa.C.S. § 2511(a) and the subsection (b) analysis in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Herein, the certified record supports the trial court's determination that CYS established the statutory grounds to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b). Hence, we do not address the remaining statutory grounds.

We have explained our review of the evidence pursuant to § 2511(a)(8), as follows:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In Re Adoption of M.E.P.*, 825 A.2d 1266, 1275-1276 (Pa.Super. 2003). Thus, in order to satisfy the requirements of § 2511(a)(8) in the case at bar, CYS was required to produce clear and convincing evidence that: (1) M.A.K. has been removed from Father for at least twelve months; (2) the conditions which led to the child's removal continue to exist; and (3) involuntary termination of parental rights would best serve M.A.K.'s needs and welfare. *See In re Adoption of R.J.S.*, 901 A.2d 502 (Pa.Super. 2006).

Instantly, CYS met its burden of proof. Initially, we observe that since M.A.K. was removed from Father's care during October of 2012, the agency satisfied the threshold requirement that the child be removed for at least twelve months. Next, as it relates to the continued existence of the conditions that predicated the removal, the certified record demonstrates that Father's compliance with CYS throughout these proceedings was minimal.

During the evidentiary hearing, Annett Town, the CYS caseworker assigned to the family, testified about Father's reunification efforts and his interaction with M.A.K. Ms. Town stated that Father was engaged in the process, at least initially, but failed to maintain his efforts or cooperate with CYS. For example, Father participated in the preliminary stages of a family preservation program, but stopped participating after attending one class. N.T., 6/5/14, at 14, 21. Father reengaged his efforts somewhat in prison by completing mental health and substance abuse programs. *Id*. at 18.

However, those programs did not address the issues that led to CYS involvement: Father's failures as a parent and the resultant guilty plea to endangering the welfare of children.

Likewise, Father did not maintain consistent physical contact with M.A.K. or send him letters regularly. While Father's mother reported unauthorized contact between Father and M.A.K. until his incarceration during April 2013, Ms. Towns confirmed that Father's last documented contact with M.A.K. occurred during January 2013. *Id*. at 16. She further highlighted that, prior to Father's April 2013 incarceration, Father was a fugitive and did not contact CYS or M.A.K. for approximately two months. *Id*. at 21-22. We observe that Father requested a visitation with M.A.K. at SCI Pine Grove, which was provided. However, by the time the necessary CYS and prison documentation was completed, the visit did not occur until March of 2014. *Id*. at 13. In the interim, Father failed to send letters or correspondence to his son through CYS or Maternal Grandmother. Instead, Father claimed, again without documentation, that he forwarded his correspondence to M.A.K. by way of the paternal grandmother. *Id*. at 18.

The foregoing testimony demonstrates that the conditions which led to M.A.K.'s removal continue to exist. Succinctly stated, Father has done little to remedy parental deficiencies or maintain contact with his son. He failed to utilize any reunification resources prior to his incarceration and completed only two programs in prison: mental health and substance abuse. Indeed,

when provided resources to address his deficient parenting skills, Father squandered that opportunity and quit the program after one class. Furthermore, there has been scant contact with M.A.K. While Father claimed to have mailed M.A.K. letters in care of the paternal grandmother, who was not the custodial grandparent, he did not document that correspondence, disclose its frequency, or indicate whether the letters were delivered to his son. Thus, the evidence sustains the orphans' court's determination that CYS established the grounds to terminate Father's parental rights pursuant to § 2511(a)(8).

Next, we address whether the trial court abused its discretion in finding that CYS presented sufficient evidence to demonstrate by clear and convincing evidence that terminating Father's parental rights and permanently severing the existing bond between him and M.A.K. would best serve the child's needs and welfare pursuant to § 2511(b). While the Adoption Act does not mandate that the trial court consider the effect of permanently severing parental bonds, our case law requires it where a bond exists to some extent. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993).

The extent of the trial court's bond-effect analysis depends upon the circumstances of a particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa.Super. 2008). We have emphasized that, while a parent's emotional bond with his child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court

when determining what is in the best interest of the child. *In re K.K.R.-S.*, 958 A.2d 529, 535-536 (Pa.Super. 2008). Indeed, the mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa.Super. 2008) (trial court's decision to terminate parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child).

As we explained in *In re K.Z.S.*, *supra* at 763 (emphasis omitted),

> In addition to a bond examination, the court may equally emphasize the safety needs of the child under subsection (b), particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs. The trial court should also examine the intangibles such as the love, comfort, security and stability the child might have with the foster parent. Another consideration is the importance of continuity of relationships to the child and whether the parent child bond, if it exists, can be severed without detrimental effects on the child. All of these factors can contribute to the inquiry about the needs and welfare of the child.

*See also In re A.S.*, 11 A.3d 473, 483 (Pa.Super. 2010) (orphans' court can emphasize safety needs, consider intangibles, such as love, comfort, security, and stability child might have with the foster parent, and importance of continuity of existing relationships).

Herein, the trial court concluded that severing the parental bond and freeing M.A.K. for adoption was in the child's best interest because the parental bond that nurtures safety, security, and permanency exists between M.A.K. and maternal grandmother rather than with Father. *See* Trial Court Opinion, 6/18/14, at 6. Specifically, the court determined,

As his caregiver essentially since birth, Grandma has also tended to the child's emotional needs and has afforded him the opportunity to know and interact with members of his extended family, including his paternal grandmother. Additionally, whatever bond he and Father may have developed in the first few months of his life have been severed. In the last seventeen months, [M.A.K.] has seen Father only once for a two-hour period of time, and while Father may deem it significant that the boy allowed his embrace before leaving Pine Grove . . . , the Court does not deem his compliance to be evidence of a father/son bond that will be detrimentally affected by terminating Father's rights, especially when [M.A.K.] was only four months old when the two were last together.

*Id*.

Our review of the certified record confirms the orphans' court's conclusion. As it relates to M.A.K.'s needs and welfare, Ms. Town explained that the agency did not conduct a formal parent-child bonding assessment due to Father's inconsistent contacts, fugitive status, and eventual re-incarceration. N.T., 6/5/14, at 18-19. Nevertheless, based upon the facts of the case, she does not believe that a meaningful bond exists between Father and M.A.K. *Id*. at 19. Ms. Town highlighted the limited contact that they shared during M.A.K.'s life. *Id*. She noted that the last time that Father had physical contact with M.A.K. was March 2014. *Id*. at 13. While Father's behavior was appropriate during the two-hour visitation at SCI Pine Grove, and although M.A.K. eventually permitted Father to hug him, the child was uncomfortable and tentative throughout the visitation. *Id*. at 13, 17.

In contrast to the limited interaction between Father and M.A.K., Ms.

Town testified that Maternal Grandmother satisfies M.A.K.'s medical concerns and attends to all of his needs. *Id*. at 22. She highlighted that, except for approximately two months, Maternal Grandmother has cared for the child for his entire life. *Id*. at 12. Maternal Grandmother anticipates adopting M.A.K. after Father's parental rights are terminated. *Id*. at 14. Ms. Town also noted that since Maternal Grandmother exercises partial physical custody of M.A.K.'s three half-siblings, he will continue to enjoy those familial relationships after his adoption. *Id*. at 20, 23. In sum, Ms. Town opined that terminating Father's parental rights was in M.A.K.'s best interest. *Id*. at 14-15.

Accordingly, in light of the frail bond between Father and M.A.K. and the additional factors that we stressed in *In re K.Z.S.*, *supra* at 763, we find that the record confirms that terminating Father's parental rights best satisfies M.A.K.'s developmental, physical, and emotional needs and welfare.

For all of the foregoing reasons, we affirm the trial court order terminating Father's parental rights to M.A.K. pursuant to § 2511(a)(8) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: 1/28/2015